UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

VICTORIA M. HERNANDEZ

    Plaintiff

v.

RES-CARE, INC.
9901 Linn Station Road
Louisville, KY 40223

    **Serve:**
C T CORPORATION SYSTEM
306 W. Main Street
Suite 512
Frankfort, KY 40601

    Defendant

Cause No. 3:17-CV-691-CRS

**COMPLAINT**

Jury Trial Demanded

Comes now the Plaintiff, Victoria M. Hernandez, by counsel (hereinafter "Ms. Hernandez"), and for her Complaint against Defendant, Res-Care, Inc. ("***ResCare***"), states as follows:

## Introduction

1. This civil action arises under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. § 12101 *et seq.*, the Federal Family Medical Leave Act, 29 U.S.C. § 2611 *et seq.*, and the Kentucky's Civil Rights Act, KRS § 344.010, *et seq.*

## Jurisdiction and Venue

2. The Court has jurisdiction over Ms. Hernandez's federal law claims pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. §12117 (the Americans with Disabilities Act), 42 U.S.C. § 2000e-5(f)(3)(Civil Rights Act of 1964), and 29 U.S.C.

§2617(a)(2)(the Family Medical Leave Act). The Court has supplemental jurisdiction over Ms. Hernandez's state law claims pursuant to 28 U.S.C. § 1367.

3. All conditions have been met to confer subject-matter jurisdiction upon this Court. Ms. Hernandez filed a charge of discrimination with the Equal Opportunity Employment Commission, Charge 474-2017-00687, claiming disability discrimination, sex discrimination and retaliation. She received a "right to sue" letter dated August 29, 2017, a copy of which is attached as Exhibit A and incorporated herein by reference.

4. Venue in this Court is proper as all parties are citizens of and reside in Jefferson County, Kentucky, and all of the complained of actions occurred in Jefferson County.

## Parties

5. Defendant, ResCare, is a Kentucky corporation organized and existing under the laws of the State of Kentucky with offices located at 9901 Linn Station Road, Louisville, Kentucky 40223.

6. ResCare is a "person" as that term is defined by KRS § 344.010(1), 42 U.S.C. § 12111(7), and 42 U.S.C. § 2000e(a).

7. ResCare is an "employer" as that term is defined by KRS 344.030(2), 42 U.S.C. §2000e(b), 42 U.S.C. §12111(5)(A), and by the Family and Medical Leave Act of 1993 ("*FMLA*"), 29 U.S.C. §2601 *et seq.* pursuant to 29 U.S.C. § 2611(4).

8. At all pertinent times herein, ResCare had in its employ and continues to employ in excess of five hundred (500) employees.

9. ResCare is a private provider of services to people with disabilities, including daily living support services and in-home care, vocational training, job placement, pharmacy, rehab and behavioral health services.

10. Plaintiff, Ms. Hernandez, is an individual residing in Jefferson County, Kentucky.

11. At all pertinent times herein, Ms. Hernandez was employed by ResCare in its Louisville, Jefferson County, Kentucky location, until ResCare terminated her employment on September 7, 2017.

## Statement of Facts in Support of Claims

12. Ms. Hernandez was hired in January 2014 as the full-time Executive Administrative Assistant to Steven S. Reed, ResCare's Chief Legal Officer, her direct supervisor.

13. Sometime in 2015, the full-time Litigation Management Specialist left ResCare's employment, and in November 2015, Ms. Hernandez was promoted to the position of Litigation Management Specialist.

14. After her promotion Ms. Hernandez continued to report directly to Mr. Reed.

15. After her promotion she was required to continue all of her duties as Executive Administrative Assistant in addition to taking on all of the duties of the Litigation Management Specialist.

16. At all pertinent times herein, Ms. Hernandez suffered from depression, sleep apnea, chondromalacia patellae and related osteoarthritis of her knees and chronic knee pain, and bone spurs and chronic pain in her right shoulder.

17. Ms. Hernandez advised her supervisor of her depression, and her knee and shoulder problems, including chronic disabling pain and difficulty walking.

18. In or about early February 2017, Mr. Reed expensed a going away luncheon for several employees in honor of a male attorney who was leaving ResCare's employment.

19. On or about February 10, 2017, Ms. Hernandez notified ResCare's human resources ("HR") that she was under physician's care and needed a medical leave for surgery to start on March 7, 2017, at which time HR provided her with paperwork that was to be completed by her physician and returned to HR no later than February 26.

20. On or about February 21, 2017, Ms. Hernandez submitted her physician's certification to HR, confirming her request for a three (3) month medical leave from March 7 through June 7, 2017, for a right total knee replacement surgery and recovery.

21. On or about February 28, 2017, Mr. Reed again invited several employees to a going away luncheon in honor of a female attorney who was also leaving ResCare's employment, and Ms. Hernandez suggested that Mr. Reed also expense this luncheon for the attending employees.

22. Mr. Reed refused to expense the luncheon, requiring that attending employees pay for the luncheon out of pocket, and Ms. Hernandez raised a concern to him, stating that she believed that the disparate way in which the payment for the luncheons was handled for a departing male and female attorney was sexist.

23. Upon information and belief, on February 28, 2007, Mr. Reed filed an internal complaint against Ms. Hernandez, asserting that she was insubordinate.

24. That same afternoon, ResCare's Chief Compliance Officer requested that Ms. Hernandez meet with her and HR to respond to questions about the conversation between Ms. Hernandez and Mr. Reed.

25. During the meeting, in addition to Ms. Hernandez acknowledging that she had made the comment to Mr. Reed that his decision was sexist, she also reported her belief that Mr. Reed was sexist.

26. ResCare granted Ms. Hernandez twelve weeks of FMLA leave, advising that her leave commenced on March 7, 2017, and she was to return to work on May 31, 2017, and provide a release to return to work signed by her doctor.

27. On or about Wednesday March 1, 2017, Ms. Hernandez started training her temporary (FMLA) replacement. During the training she noticed that Mr. Reed had removed her access to his electronic calendars and emails, which she had always had and used in performing her job duties for him.

28. On March 7, 2017, Ms. Hernandez underwent a total right knee replacement, and was released from the hospital on March 10, 2017, for eight to twelve (8-12) weeks of recovery and therapy.

29. On May 18, 2017, while still on FMLA leave, Ms. Hernandez underwent surgery on her right shoulder to repair a torn rotator cuff among other shoulder repairs performed at that time.

30. On May 26, 2017, Ms. Hernandez's treating physician released her to return to work on May 31, 2017, without restriction.

31. In compliance with the FMLA, ResCare restored Ms. Hernandez to her former position on May 31, 2017.

32. During Ms. Hernandez's FMLA leave, three (3) new associate general counsels began working in ResCare's legal department under Mr. Reed.

33. Upon information and belief, during Ms. Hernandez's medical leave, Mr. Reed told the new employees to report any issues that they might have with Ms. Hernandez upon her return, because she has an "attitude problem."

34. Upon Ms. Hernandez's return to work, she advised her supervisor that she would need to leave early or come in late several days because of doctor appointments and therapy relating to her shoulder surgery recovery. In addition, after her return to work from her leave, every day, at least once a day, she would ice her shoulder while at work.

35. Upon her return to work, Mr. Reed started scrutinizing Ms. Hernandez's work more closely, and demanded that she perform duties that were not part of her job description, and which she had not performed prior to her FMLA leave.

36. Ms. Hernandez contacted HR and requested an appointment so that she could discuss the stress Mr. Reed was causing her, and the difficulty she was having in keeping up with her work load; however, during the meeting with HR which she had requested and scheduled for July 20, 2017, she was handed a Thirty Day Performance Improvement Plan ("PIP") from Mr. Reed.

37. At all pertinent times herein, Ms. Hernandez was a "qualified individual" with a disability as contemplated by KRS 344.030(1) and 42 U.S.C. § 12111(8), in that she could have performed her essential job functions if ResCare would have provided her with certain reasonable accommodations that she requested.

38. On July 31, 2017, Ms. Hernandez submitted a written request for a workplace accommodation from her doctor in which he requested that Ms. Hernandez have

6

her work load adjusted to assist her in her recovery from her shoulder surgery. The written request stated: "This will impact repetitive use such as mouse/keyboard function during recovery over next couple of months."

39. In a meeting on July 31, 2017, as documented by letter of that same date, Mr. Reed and ResCare refused the accommodation request, claiming that they had no available job that did not involve mouse and keyboard use which could meet the doctor's requests, and that ResCare was placing Ms. Hernandez on a sixty day medical leave. The letter further advised that Ms. Hernandez's job was not secure, since it was not an FMLA protected leave. She was also advised that in order for her to be able to return to work, she would have to provide a doctor's note indicating that she was fit for duty and could perform repetitive activities such as keyboarding, typing, use of mouse, etc.

40. On August 4, 2017, Ms. Hernandez received a notice that during her leave she was not allowed to come in to the ResCare offices without making an appointment, and that her card access to the building was suspended.

41. During her FMLA leave she had not been told that she needed an appointment to come into the building and her card access was not suspended.

42. On August 7, 2017, Ms. Hernandez emailed HR to submit a modified light duty request from her physician and to request an appointment to discuss the accommodation request, which request stated that starting August 7, and pending a follow-up visit on August 28, 2017, Ms. Hernandez could use a keyboard and mouse, but requested the following accommodation:

- A 4-6 hour workday
- Breaks to ice her right shoulder of 10-15 minutes each
- Cut workload in half

7

- Excuse days when she experiences flare ups in her shoulder pain
- Time to attend physical therapy appointment for her shoulder

43. On August 10, 2017, as scheduled, Ms. Hernandez met with HR to discuss the modified temporary light duty accommodation request.

44. On August 14, 2017, ResCare denied the request in writing, again claiming that it had no jobs available that fit the modified duties, and that all ResCare could and would offer was the continued sixty day leave of absence.

45. On August 22, 2017, Ms. Hernandez swore out a charge of discrimination before the Equal Employment Opportunity Commission ("EEOC") against ResCare, Charge No. 474-2017-00687, claiming that she was subjected to different terms and conditions of employment, including additional scrutiny, discipline, and other retaliation based on her request for reasonable accommodations due to her serious health conditions, including her request for FMLA leave, and/or because she complained of gender discrimination.

46. On or about August 28, 2017, Ms. Hernandez submitted another request for temporary light duty to continue until her next follow up visit, which reiterated that Ms. Hernandez could use a keyboard and mouse and stated that she could work a full eight (8) hour workday, requesting only the following accommodations:

- breaks to ice her right shoulder of 10-15 minutes each
- a lightened workload
- time to attend physical therapy appointment for the right shoulder

47. The EEOC issued a Notice of Suit Rights on August 29, 2017, a copy of which was mailed to ResCare that same date.

48. On September 5, 2017, Ms. Hernandez communicated with HR, stating that she had submitted a release to return to work the prior week and had not heard from anyone. She requested an appointment to discuss her return to work.

49. On September 7, 2017, Ms. Hernandez met with HR at which time she was advised that her employment was terminated as of September 7, 2017, as her position had been filled due to business needs.

50. On or about October 18, 2017, Ms. Hernandez filed a second charge of discrimination with the EEOC, Charge No. 474-2018-00029, relating to ResCare's actions after August 22, 2017, claiming retaliatory discharge and disability discrimination, including another claim for failure to accommodate, in violation of Title I of the Americans with Disabilities Act of 1990, as amended.

### Count I:  Discrimination and Retaliation in Violation of 42 U.S.C. § 12112(a)

51. Ms. Hernandez restates paragraphs 1 to 50 herein.

52. ResCare's discriminatory conduct on the basis of Ms. Hernandez's disability, including but not limited to its failure to provide reasonable accommodations, hostile work environment, and discharge of Ms. Hernandez in connection with Ms. Hernandez's disabilities and after she complained of unlawful discrimination, constitutes violations of the anti-discrimination provisions of the federal Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12112(a) *et seq*.

53. ResCare acted with malice and/or with reckless indifference to Ms. Hernandez's rights under the American's with Disabilities Act of 1990, as amended.

54. As a direct and proximate result of ResCare's conduct, as herein alleged, Ms. Hernandez has suffered lost wages, emotional pain and other non-pecuniary losses,

entitling Ms. Hernandez to relief therefrom in the form of back pay, front pay, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, plus attorney's fees and costs, and punitive damages.

55. Pursuant to 42 U.S.C.A. § 1981a(a)(2)&(b)(1), Ms. Hernandez is entitled to recover from ResCare a sum for punitive damages in addition to compensation for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

### Count II: Discrimination and Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

56. Ms. Hernandez restates paragraphs 1 to 50 herein.

57. ResCare's discriminatory and retaliatory conduct on the basis of Ms. Hernandez's complaints of gender discrimination, including but not limited to subjecting her to additional scrutiny, increasing her job duties, and discharge of Ms. Hernandez after she complained of unlawful discrimination, constitutes violations of the anti-discrimination provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*.

58. ResCare acted with malice and/or with reckless indifference to Ms. Hernandez's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*.

59. As a direct and proximate result of ResCare's conduct, as herein alleged, Ms. Hernandez has suffered lost wages, emotional pain and other non-pecuniary losses, entitling Ms. Hernandez to relief therefrom in the form of back pay, front pay, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses, plus attorney's fees and costs, and punitive damages.

60. Pursuant to 42 U.S.C.A. § 1981a(a)(1)&(b)(1), Ms. Hernandez is entitled to recover from ResCare a sum for punitive damages in addition to compensation for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

### Count III: Discrimination and Retaliation in Violation of KRS 344

61. Ms. Hernandez restates paragraphs 1 to 50 herein.

62. ResCare's discriminatory conduct on the basis of Ms. Hernandez's claims of gender discrimination, and disability discrimination and retaliation, including but not limited to failing to provide reasonable accommodations to Ms. Hernandez for her disability, harassment, and discharge of Ms. Hernandez from her employment, constitutes violations of the anti-discrimination provisions of Kentucky's Civil Rights Act, KRS 344 *et seq*.

63. As a direct and proximate result of ResCare's conduct, as herein alleged, Plaintiff, Ms. Hernandez, has suffered lost wages, emotional pain and other non-pecuniary losses, entitling Ms. Hernandez to relief therefrom in the form of back pay, front pay and other terms, conditions, and privileges of employment, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, plus attorney's fees and costs.

### Count IV: Discrimination for Ms. Hernandez's Exercise of her FMLA Rights in Violation of 29 U.S.C. § 2615(a)(2)

64. Ms. Hernandez restates paragraphs 1 to 50 herein.

65. ResCare discriminated against and discharged Ms. Hernandez from employment on or about September 7, 2017, in violation of the Family Medical Leave Act ("**FMLA**"), 29 U.S.C. § 2615(a)(2).

66. ResCare's actions and or omissions in discriminating against Ms. Hernandez for exercising her rights under the FMLA, subjecting her to scrutiny and discipline, and terminating her employment were not taken in good faith.

67. Because of ResCare's violation of the FMLA, Ms. Hernandez is permitted a civil action in this Court against ResCare, recovery of actual damages suffered, including the loss of earnings and benefits she has sustained due to the termination of her employment, interest, liquidated damages, and her costs in bringing and pursuing this action, including an award of reasonable attorney's fees.

68. As a direct and proximate result of ResCare's conduct, as herein alleged, Ms. Hernandez has suffered lost wages, emotional pain and other non-pecuniary losses, entitling Ms. Hernandez to relief therefrom in the form of back pay, front pay, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, plus attorney's fees and costs, and liquidated damages.

**WHEREFORE**, Plaintiff, Victoria Hernandez, demands relief as follows:

A. Judgment against ResCare in Ms. Hernandez's favor on all counts;

B. An award of compensatory damages including but not limited to past and future lost wages and past and future lost benefits;

C. An award of compensatory damages including but not limited to emotional distress, mental anguish, embarrassment, humiliation, and other non-pecuniary losses;

       D.       An award of liquidated damages for the FMLA violations;

       E.       An award of punitive damages for the Title VII and ADAAA violation;

       F.       Trial by jury;

       G.       An award of statutory interest on all damage awards, verdicts or judgments;

       H.       An award of costs incurred herein, including a reasonable attorney's fee;

and,

       I.       Any and all other relief to which Ms. Hernandez may be entitled.

       Respectfully submitted,

       /s/Ayala Golding
       Ayala Golding, Esq.
       Tilford, Dobbins & Schmidt, PLLC
       401 West Main Street, Suite 1400
       Louisville, Kentucky 40202
       Phone: (502) 584-1000
       agolding@tilfordlaw.com

       *Counsel for Plaintiff Victoria Hernandez*